UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

JESUS MAXIMINO HURTADO
BARRERA,                                                                                              Petitioner,

v.                                                                              Civil Action No. 4:26-cv-40-DJH

MIKE LEWIS, Jailer, Hopkins County Jail
et al.,                                                                                               Respondents.

\* \* \* \* \*

**MEMORANDUM AND ORDER**

Jesus Maximino Hurtado Barrera, a noncitizen resident of Illinois currently detained in the Western District of Kentucky, seeks a writ of habeas corpus pending removal proceedings. He alleges that his detention by immigration authorities violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. (Docket No. 1) The parties agreed to forgo a show-cause hearing in the absence of a material factual dispute (*see* D.N. 5), and they have submitted briefs setting out their respective legal arguments (D.N. 10; D.N. 11). After careful consideration, the Court will grant Hurtado Barrera's petition for the reasons explained below.

I.

Hurtado Barrera is a thirty-five-year-old native and citizen of Mexico. (D.N. 1, PageID.4 ¶ 10; D.N. 1-1, PageID.20) He was brought to the United States as an infant in 1991. (D.N. 1, PageID.4 ¶ 10) He is married and has one child, who is a U.S. citizen. (*Id.*) On April 13, 2017, Hurtado Barrera was placed in removal proceedings via a Notice to Appear, which charged him as "an alien present in the United States who has not been admitted or paroled." (D.N. 1-1, PageID.20) An administrative arrest warrant was issued the same day authorizing his detention under 8 U.S.C. § 1226. (D.N. 1-2, PageID.23) Hurtado Barrera was released on bond pursuant to

§ 1226 on May 8, 2017.[1] (D.N. 1, PageID.4 ¶ 11; *see* D.N. 10-1, PageID.73) "His removal proceedings remained pending while [the Department of Homeland Security] reviewed his application for U-Nonimmigrant Status" submitted on February 20, 2018. (D.N. 1, PageID.4 ¶ 11; *see* D.N. 1-3, PageID.25) Hurtado Barrera "was found prima facie eligible for [that] relief because he was the victim of attempted murder and served as a cooperating witness against his assailant." (D.N. 1, PageID.4 ¶ 11) On December 15, 2020, his case before the immigration court was administratively closed. (*See* D.N. 10-2, PageID.76) On January 9, 2024, Hurtado Barrera was placed in deferred action, which made him a "lower priority for removal." (D.N. 1-3, PageID.25) U.S. Immigration and Customs Enforcement (ICE) cancelled Hurtado Barrera's bond on May 10, 2025 (D.N. 10-3, PageID.77), and his proceedings were "recalendar[ed]" in immigration court on November 14, 2025. (D.N. 10-4, PageID.78) On December 3, 2025, Hurtado Barrera was arrested for operating a vehicle while intoxicated; that charge remains pending. (D.N. 10-5, PageID.81) ICE officials took Hurtado Barrera into custody on December 20, 2025, pursuant to a new administrative arrest warrant authorizing his detention under 8 U.S.C. § 1226. (*Id.*; D.N. 10-6, PageID.83) He is detained at the Hopkins County Jail. (D.N. 1, PageID.1 ¶ 1; D.N. 10, PageID.68)

Hurtado Barrera seeks a writ of habeas corpus against Hopkins County Jailer Mike Lewis, Chicago ICE Field Office Director Samuel Olson, Department of Homeland Security Secretary Kristi Noem, and U.S. Attorney General Pamela Bondi. (D.N. 1, PageID.1–2 ¶¶ 1–4) Hurtado Barrera alleges that his detention without a bond hearing violates the Immigration and Nationality Act, 8 U.S.C. §§ 1225–1226, and due process under the Fifth Amendment. (*See id.*, PageID.16–

---

[1] For individuals arrested under § 1226(a), an immigration officer makes an initial custody determination; the noncitizen may then request a custody redetermination (via a bond hearing) before an immigration judge. *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *5 (W.D. Ky. Nov. 4, 2025) (citations omitted).

2

17 ¶¶ 29–31)  Hurtado Barrera asks the Court to order his immediate release or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a).  (*See id.*, PageID.17)  Respondents argue that (1) Hurtado Barrera is an applicant for admission who is seeking admission and is thus properly detained under § 1225(b)(2); (2) their "reading of Section 1225(b)(2) does not render Section 1226(c) superfluous"; and (3) Hurtado Barrera's detention does not violate due process because he "was afforded all the process he was due" under § 1225.[2]  (*See* D.N. 10, PageID.68–69; D.N. 10-7, PageID.116, 118)

## II.

**A.   Immigration and Nationality Act**

Hurtado Barrera contends that he "is not subject to mandatory detention under Section 1225(b)(2)(A) but, rather, [is] eligible for release pursuant to Section 1226(a)."  (D.N. 1, PageID.14 ¶ 23)   Respondents argue that § 1225 authorizes Hurtado Barrera's detention, incorporating by reference arguments from the appellants' brief in *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025), *appeal docketed*, No. 25-1965 (6th Cir. Oct. 27, 2025).  (*See generally* D.N. 10-7)

Respondents' arguments are nearly identical to those made in *Alonso*.  The Court thus summarizes and incorporates by reference its reasoning and determination from that decision.  There, the Court found that the petitioner was an applicant for admission as an "alien present in the United States who ha[d] not been admitted," 2025 WL 3083920 at *5 (quoting § 1225(a)(1)),

---

[2] Respondents do not dispute that the Court has jurisdiction to review Hurtado Barrera's petition (*see* D.N. 10-7, PageID.100).  *See Lopez v. Olson*, No. 3:25-cv-654-DJH, 2025 WL 3217036, at *2 (W.D. Ky. Nov. 18, 2025) ("[28 U.S.C. § 2241] confers jurisdiction [on district courts] to hear habeas corpus challenges to the legality of a noncitizen's detention." (citing *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004))).  Nor do Respondents argue whether Hurtado Barrera must exhaust his administrative remedies.  (D.N. 10-7, PageID.114 n.4)  Therefore, the Court will not address these issues.

but that he was not "seeking admission" because he was residing in the United States at the time of his arrest. *See id.* at *5, *7. Likewise, Hurtado Barrera is an applicant for admission because he is an "alien present in the United States who has not been admitted," § 1225(a)(1) (*see* D.N. 1-1, PageID.20), but he is not "seeking admission" under § 1225(b)(2)(A) because he has lived in the United States for more than three decades. *See Alonso*, 2025 WL 3083920, at *6. "[T]he category of applicants for admission covered by § 1225(b)(2) who are 'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering." *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025). Hurtado Barrera was apprehended while residing in the interior of the United States and thus does not fall within this category. (*See* D.N. 10-5, PageID.81) In any event, this Court and others have found § 1225(b)(2) inapplicable to petitioners like Hurtado Barrera who resided in the United States for extended periods before their arrest. *See, e.g.*, *Alonso*, 2025 WL 3083920, at *1 (approximately twelve years); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025) (twenty years); *De Jesus Ramirez v. Noem*, No. 1:25-cv-1261, 2025 WL 3039266, at *5 (W.D. Mich. Oct. 31, 2025) (nearly thirty years).

Respondents additionally argue that their position "does not render Section 1226(c) superfluous." (D.N. 10-7, PageID.134) They claim that "[a]lthough Section 1226(c) and Section 1225(b)(2) overlap for some aliens, each provision has independent effect." (*Id.*, PageID.133) As the Court explained in *Alonso*, the recent amendment to § 1226, codified in § 1226(c)(1)(E), "applies to noncitizens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A) and who have been charged with, arrested for, or convicted of 'burglary, theft, larceny, shoplifting, or assault of a law enforcement officer . . . , or any crime that results in death or serious bodily injury to another person.'" 2025 WL 3083920 at *6 (quoting § 1226(c)(1)(E)(ii)). "Considering that

4

§ 1182(a)(6)(A)(i) specifically refers to aliens 'present in the United States without being admitted or paroled,' and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well." *Pizarro Reyes*, 2025 WL 2609425, at *5 (citation omitted). Thus, despite overlap between § 1225(b) and § 1226(c) regarding noncitizens who have not been admitted or paroled, Respondents' reading of § 1225 would render § 1226(c) superfluous. *See id.* ("[B]ecause an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted [under § 1225(b)(2)(A)],' ICE would never need to rely on § 1226(c)(1)(E) to detain them." (citations omitted)); *Hurtado v. Jamison*, No. 25-6717, 2025 WL 3678432, at *5 (E.D. Pa. Dec. 18, 2025) ("[T]hese recent amendments drive home the conclusion that Congress never intended § 1225(b)(2)(A) to apply to noncitizens who have been permitted to come into [the United States], on parole or otherwise, and have been residing in this country for years.").

Respondents also maintain that their position is supported by the Supreme Court's opinion in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). (*See* D.N. 10-7, PageID.140–42) *Jennings* considered whether §§ 1225(b), 1226(a), and 1226(c) require providing periodic bond hearings to noncitizens detained under those provisions. *See* 583 U.S. at 286, 291. As Respondents note, "the Supreme Court [in *Jennings*] did not rule on whether non-admitted or inadmissible aliens fell within Section 1226(a) as opposed to Section 1225(b)(2)(A)." (D.N. 10-7, PageID.142) Whether Respondents' position is consistent with *Jennings* is thus not dispositive here. In any event, *Jennings* stated that "§ 1226 applies to aliens already present in the United States[, and §] 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." 583 U.S. at 303. The

5

opinion also described § 1225(b)(1) and (b)(2) as "authoriz[ing] the [g]overnment to detain certain aliens *seeking admission* into the [United States]." *Id.* at 289 (emphasis added). Thus, the Court's reading of the relevant statutes is consistent with *Jennings*.

In accordance with its prior decisions addressing the same issue, the Court concludes that Hurtado Barrera is detained under § 1226(a), not § 1225(b)(2), and is thus entitled to a bond hearing. *See Coronel-Hernandez v. Woosley*, No. 4:26-cv-20-DJH, 2026 WL 227011, at *4 (W.D. Ky. Jan. 28, 2026); *Singh v. Lewis*, No. 4:25-cv-133-DJH, 2025 WL 3298080, at *5 (W.D. Ky. Nov. 26, 2025); *Lopez*, 2025 WL 3217036, at *3; *Alonso*, 2025 WL 3083920, at *8.

**B.     Due Process**

Hurtado Barrera asserts that his detention violates due process under the Fifth Amendment. (*See* D.N. 1, PageID.16–17 ¶¶ 30–31) Respondents argue that "Section 1225(b)(2) does not afford Petitioner the ability to obtain release on bond, and so the Due Process Clause does not either." (D.N. 10-7, PageID.143) Because Hurtado Barrera is detained under § 1226(a), not § 1225(b)(2), Respondents' argument as to the due process required by § 1225(b)(2) is irrelevant. *Singh*, 2025 WL 3298080, at *5.

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings. *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam) (citation omitted). To determine whether civil detention violates a petitioner's due process rights, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Alonso*, 2025 WL 3083920, at *8 (citing *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *6 (W.D. Ky. Sep. 19, 2025)). Under that test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the

> probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Barrera*, 2025 WL 2690565, at *6 (citing *Mathews*, 424 U.S. at 335).

Like the petitioners in *Barrera* and other cases recently before the Court, Hurtado Barrera "has a significant private interest in not being detained." *Id.*; *see Singh*, 2025 WL 3298080, at *6; *Alonso*, 2025 WL 3083920, at *9. Moreover, "the risk of erroneously depriving [Hurtado Barrera] of his freedom is high if the [immigration judge] fails to assess his risk of flight and dangerousness." *Lopez-Campos*, 797 F. Supp. 3d at 785; *see* 8 C.F.R. § 1236.1(c)(8), (d)(1). Finally, the Court "recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings." *Barrera*, 2025 WL 2690565, at *7 (citation omitted). But a "routine bond hearing before an [immigration judge]" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that [the Department of Homeland Security] can readily follow here." *Hyppolite*, 2025 WL 2829511, at *15. Thus, because all three *Mathews* factors weigh in Hurtado Barrera's favor, the Court concludes that his detention violates due process. *See Singh*, 2025 WL 3298080, at *5–6; *Barrera*, 2025 WL 2690565, at *6–7.

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Hurtado Barrera's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**. Respondents are **DIRECTED** to immediately release Hurtado Barrera, and, in the event he is arrested and re-detained, provide him with a bond hearing before a neutral Immigration Judge in

7

accordance with 8 U.S.C. § 1226(a).  Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **February 20, 2026**.

(2)     Hurtado Barrera's emergency motion for a temporary restraining order or preliminary injunction (D.N. 2) is **DENIED** as moot.

(3)     Upon receipt of the notice of compliance, this matter will be **CLOSED**.

February 17, 2026

David J. Hale, Chief Judge
United States District Court